IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUXOTTICA GROUP S.p.A., OAKLEY, INC., and COSTA DEL MAR, INC., <br><br> Plaintiffs, <br><br> v. <br><br> THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", <br><br> Defendants. | Case No. 22-cv-01306 <br><br> **Judge Virginia M. Kendall** <br><br> **Magistrate Judge Sunil R. Harjani** |

**Declaration of Justin R. Gaudio**

## DECLARATION OF JUSTIN R. GAUDIO

I, Justin R. Gaudio, of the City of Chicago, in the State of Illinois, declare as follows:

1. I am an attorney at law, duly admitted to practice before the Courts of the State of Illinois and the United States District Court for the Northern District of Illinois. I am one of the attorneys for Plaintiffs Luxottica Group S.p.A., Oakley, Inc., and Costa Del Mar, Inc. (collectively, "Plaintiffs"). Except as otherwise expressly stated to the contrary, I have personal knowledge of the following facts and, if called as a witness, I could and would competently testify as follows:

2. According to U.S. Customs and Border Protection (CBP), most counterfeit products now come through international mail and express courier services (as opposed to containers) due to increased sales from offshore online counterfeiters. *The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States* prepared for The Buy Safe America Coalition by John Dunham & Associates. A true and correct copy of this report is attached hereto as **Exhibit 1**. The bulk of counterfeit products sent to the United States "come from China and its dependent territories," accounting for over 90.6% of all cargo with intellectual property rights (IPR) violations. *Id.* Of the $1.23 billion in total IPR violations intercepted, $1.12 billion was from China. *Id.*

3. According to a report released by the U.S. Chamber of Commerce Global Intellectual Property Center (GIPC) titled *Measuring the Magnitude of Global Counterfeiting*, at least 86 percent of all global counterfeit products originate in Chinese and Hong Kong markets. A true and correct copy of an article released by GIPC summarizing the report is attached hereto as **Exhibit 2**.

4. A February 2017 report commissioned by Business Action to Stop Counterfeiting and Piracy (BASCAP) and the International Trademark Association (INTA) entitled *The Economic Impacts of Counterfeiting and Piracy* included findings that counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue. A true and correct copy of this report is attached hereto as **Exhibit 3**.

5. In my experience in combating online counterfeiting over the last ten years, I have observed counterfeiters using a variety of tactics to evade enforcement efforts. Specifically, counterfeiters like Defendants in the present case will often register new e-commerce stores under new aliases once they receive notice of a lawsuit.

6. In my experience, once notice of a lawsuit is received, counterfeiters such as Defendants move funds from their financial accounts to off-shore bank accounts outside the jurisdiction of this Court. Financial account transaction logs that I have reviewed in previous similar cases indicate that counterfeiters transfer and/or attempt to transfer funds to off-shore bank accounts outside the jurisdiction of this Court once they have received notice of a lawsuit. This includes the following specific examples from factually similar cases.

7. In *Volkswagen AG, et al. v. hkseller*2011, et al.*, No. 18-cv-07621 (N.D. Ill. May 6, 2019), the Court found that defendants took deliberate action to avoid the asset restraint. At Plaintiffs' motion for an asset restraint hearing on December 6, 2018, defendants' counsel represented that at least $26,000 would remain in the PayPal account at issue until the next hearing on December 12, 2018. Between December 6, 2018 and December 12, 2018, defendants' PayPal accounts balance was reduced from $61,200 to approximately $26,500. The asset restraint was reinstated at the December 12, 2018 hearing. However, shortly after

the December 12, 2018 hearing and before plaintiffs could effectuate the reinstated asset restraint, defendants withdrew $20,000 from the PayPal account. Defendants' counsel later withdrew from representation, and defendants did not file a response to plaintiffs' motion for summary judgment. Judgment in the amount of $200,000 was entered. Defendants have not satisfied the judgment beyond the restrained funds.

8. In *PopSockets LLC v. Xuebo50, et al.*, No. 17-cv-06101 (N.D. Ill. Oct. 12, 2017), a defendant's PayPal account was restrained with an initial balance of $1,611,921. The PayPal account was released with the expectation that defendant would not be able to withdraw several hundred thousand dollars that were being held for potential consumer chargebacks. However, there was a misunderstanding with PayPal and defendant reduced the account balance from $1,611,921 to $36,469 after receiving notice of the lawsuit. This defendant did not appear in the case, and default and default judgment were entered against the defendant.

9. A PayPal account linked to defendants in *Deckers Outdoor Corporation v. Ye Liang, et al.*, No. 19-cv-00706 (N.D. Ill. Apr. 5, 2019), *Patagonia, Inc. v. Yehua Guo, et al.*, No. 18-cv-04467 (N.D. Ill. Sept. 27, 2018), and *Gianni Versace, S.p.A. v. Zhao Dequn, et al.,* No. 18-cv-06412 (N.D. Ill. Nov. 20, 2018) was restrained with an initial balance of $2,109,244. However, due to a miscommunication with PayPal, the PayPal account was improperly released for all three cases. Shortly after the account was released, defendants reduced the account balance from $2,109,244 to $194,508 by transferring funds to an external bank account.

10. In my experience, even when defendants are not able to withdraw funds from the accounts, defendants employ other tactics to evade asset restraints. For example, in the case *Monster Energy Company v. Zuichudesecai, et al.*, No. 19-cv-00551 (N.D. Ill. Aug. 8, 2019),

4

defendant's PayPal account was restrained with an initial balance of $72,370. Defendant obtained counsel and filed a motion to dismiss. Defendant's motion to dismiss was denied, and subsequently defendant's counsel withdrew from the case. When defendant failed to obtain new counsel or file an answer as ordered by the Court, default and default judgment were entered against the defendant. However, during the lawsuit defendant covertly coordinated with buyers to initiate chargebacks that reduced the account to a negative balance of -$17,657.

11. For these reasons, in the absence of an *ex parte* Order, Defendants could and likely would move any assets from accounts in financial institutions subject to this Court's jurisdiction to off-shore accounts.

12. **Exhibit 4** attached hereto is a true and correct copy of the unpublished decisions cited in Plaintiffs' Memorandum in Support of the Motion for a Temporary Restraining Order.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this the 15th day of March 2022 at Chicago, Illinois.

/s/ Justin R. Gaudio
Justin R. Gaudio
Counsel for Plaintiffs
Luxottica Group S.p.A., Oakley, Inc., and Costa Del Mar, Inc.