**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LUXOTTICA GROUP S.p.A., OAKLEY, INC., and COSTA DEL MAR, INC., | Case No. 22-cv-01306 |
| Plaintiffs, | **Judge Virginia M. Kendall** |
| v. | **Magistrate Judge Sunil R. Harjani** |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", | |
| Defendants. | |

**Declaration of Jason Groppe**

1

## DECLARATION OF JASON GROPPE

I, Jason Groppe, declare and state as follows:

1.    This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

2.    I am Assistant General Counsel, Global Intellectual Property Enforcement for Luxottica U.S. Holdings Corp., a subsidiary of Luxottica Group S.p.A., which is a subsidiary of EssilorLuxottica (collectively, "Luxottica"). Plaintiffs Oakley, Inc. ("Oakley") and Costa Del Mar, Inc. ("Costa") are subsidiaries of Luxottica. Luxottica, Oakley, and Costa are collectively referred to herein as "Plaintiffs."  I am knowledgeable of or have access to business records concerning all information referenced herein, including, but not limited to, Plaintiffs' trademarks, copyrights, other intellectual property, sales, on-line sales, advertising, marketing and media coverage. I make this declaration from matters within my own knowledge save where otherwise stated.

3.    Plaintiff Luxottica Group S.p.A. is a corporation duly organized under the laws of Italy with its principal place of business in Milan, Italy and an office located at 4000 Luxottica Place, Mason, Ohio 45040-8114.  Plaintiff Oakley, Inc. is a corporation organized and existing under the laws of the State of Washington, having its principal place of business at One Icon, Foothill Ranch, California 92610. Plaintiff Costa Del Mar, Inc. is a corporation duly organized under the laws of Florida with its principal place of business in Daytona Beach, Florida and an office located at 2361 Mason Avenue, Suite 100, Daytona Beach, Florida, 32117-5166.

4.     Plaintiffs are engaged in the business of producing, manufacturing and distributing throughout the world, including within this judicial district, premium, luxury and sports eyewear products under federally registered trademarks, including, but not limited to, under the RAY-BAN, OAKLEY, and COSTA trademarks.

5.     For generations, the Plaintiffs' brands have been the undisputed world leaders in the field of sun and prescription eyewear products, including those which prominently display the famous, internationally recognized, and federally registered RAY-BAN, OAKLEY, and COSTA trademarks (collectively, the "Plaintiffs' Products").

6.     Plaintiffs' Products have become enormously popular and even iconic, driven by the brand's arduous quality standards and innovative design. Among the purchasing public, genuine Plaintiffs' Products are instantly recognizable as such. In the United States and around the world, Plaintiffs' brands have come to symbolize high quality, and Plaintiffs' Products are among the most recognizable eyewear in the world. Plaintiffs' Products are distributed and sold to consumers through retailers throughout the United States, including through authorized retailers in Illinois such as Sunglass Hut, Oakley O Stores, high-end department stores, and through the official websites at ray-ban.com, oakley.com, and costadelmar.com.

7.     Plaintiffs incorporate a variety of distinctive marks in the design of the various Plaintiffs' Products. As a result of long-standing use, Plaintiffs own common law trademark rights in the Plaintiffs' Trademarks. Plaintiffs have also registered several of the trademarks with the United States Patent and Trademark Office. Plaintiffs' Products often include at least one of Plaintiffs' registered trademarks. Plaintiffs use their trademarks in connection with the

marketing of Plaintiffs' Products, including the following registered marks, collectively referred to as the "Plaintiffs' Trademarks."

| Registration Number | Trademark | Goods and Services |
|---|---|---|
| 1,080,886 | RAY-BAN | For: Ophthalmic products and accessories-namely, sunglasses; eyeglasses; spectacles; lenses and frames for sunglasses, eyeglasses, and spectacles in class 9. |
| 2,718,485 | RAY-BAN | For: Goods made of leather and imitation leather, namely, wallets, card cases for business cards, calling cards, name cards and credit cards in class 18.<br><br>For: Clothing for men and women, namely, polo shirts; headgear, namely, berets and caps in class 25. |
| 595,513 | WAYFARER | For: Sun glasses in class 9. |
| 1,537,974 | CLUBMASTER | For: Sunglasses in class 9. |
| 650,499 |  | For: Sun glasses, shooting glasses, and ophthalmic lenses in class 9. |
| 1,093,658 |  | For: Ophthalmic products and accessories-namely, sunglasses; eyeglasses; spectacles; lenses and frames for sunglasses, eyeglasses, spectacles; and cases and other protective covers for sunglasses, eyeglasses, and spectacles in class 9. |

| | | |
|---|---|---|
| 1,726,955 |  | For: Bags; namely, tote, duffle and all purpose sports bags in class 18.<br><br>For: Cloths for cleaning opthalmic products in class 21.<br><br>For: Clothing and headgear; namely, hats in class 25. |
| 1,320,460 |  | For: Sunglasses and carrying cases therefor in class 9. |
| 3,522,603 |  | For: Sunglasses, eyeglasses, lenses for eyeglasses, eyeglasses frames, and cases for eyeglasses in class 9. |
| 1,521,599 | OAKLEY | For: Sunglasses and accessories for sunglasses, namely, replacement lenses, ear stems and nose pieces in class 9. |
| 1,522,692 | OAKLEY | For: Clothing, namely, shirts and hats in class 25. |
| 1,552,583 | OAKLEY | For: Goggles in class 9. |
| 2,293,046 | OAKLEY | For: Clothing, headwear and footwear and footwear, namely, sport shirts, jerseys, shirts, jackets, vests, sweatshirts, pullovers, coats, ski pants, headwear, caps, shoes, athletic footwear, all |

| | | purpose sports footwear and socks in class 25. |
|---|---|---|
| 3,153,943 | OAKLEY | For: Prescription eyewear, namely, sunglasses and spectacles; eyewear containing electronics devices, namely, protective eyewear, eyeglasses, sunglasses and spectacles; electronics, namely portable digital electronic devices for recording, organizing, and reviewing text, data and audio files; computer software for use in recording, organizing, and reviewing text, data and audio files on portable digital electronic devices; transmitters, receivers, speakers and parts thereof for use with cellular, wireless computer and telephone communication systems; communication devices for use on eyewear, namely earpieces, transmitters, receivers, speakers and parts thereof for use with cellular, wireless computer and telephone communication systems; wearable audio visual display, namely, protective eyewear, eyeglasses, sunglasses and spectacles containing an audio visual display; wireless telecommunications modules in class 9. |

| | | |
|---|---|---|
| 3,771,517 | OAKLEY | For: Retail store services and on-line retail store services featuring eyewear, replacement lenses, eyewear nosepiece kits, clothing, headwear, footwear, watches, decals, electronics devices, posters, athletic bags, handbags, backpacks and luggage in class 35. |
| 1,980,039 | OAKLEY | For: Protective and/or anti-glare eyewear, namely sunglasses, goggles, spectacles and their parts and accessories, namely replacement lenses, earstems, frames, nose pieces and foam strips; cases specially adapted for protective and/or anti-glare eyewear and their parts and accessories in class 9. |
| 1,356,297 | OAKLEY | For: Goggles, sunglasses, and protective pads for elbows, feet and knees in class 9. For: Clothing - namely t-shirts; gloves; racing pants; hats; sweatshirts; sport shirts, jackets, jeans, jerseys and ski pants, jackets, hats, gloves and socks in class 25. |
| 1,519,596 | OAKLEY | For: Sunglasses and accessories for sunglasses, namely, replacement lenses, ear stems and nose pieces in class 9. |
| 3,496,633 | | For: Clothing, namely, t-shirts, beach-wear, blouses, sports shirts, jerseys, swimwear, swimtrunks, shorts, underwear, shirts, pants, racing pants, ski and snowboard pants and jackets, jeans, vests, jackets, wetsuits, |

| | | |
|---|---|---|
| | | sweaters, pullovers, coats, sweatpants, headwear, namely, hats, caps, visors and footwear, namely, wetsuit booties, shoes, sandals, athletic footwear, all purpose sports footwear, thongs and boots in class 25. |
| 3,331,124 | | For: Protective eyewear, namely spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories; and protective clothing, namely, racing pants in class 9.<br><br>For: Clothing, namely, t-shirts, beach-wear, blouses, sports shirts, jerseys, swimwear, swimtrunks, shorts, underwear, shirts, pants, ski and snowboard pants and jackets, jeans, vests, jackets, wetsuits, sweaters, pullovers, coats, sweatpants, headwear, namely, hats, caps, visors and footwear, namely wetsuit booties, shoes, sandals, athletic footwear, all purpose sports footwear, thongs and boots in class 25. |
| 3,151,994 | | For: Protective eyewear, namely spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely replacement lenses, frames, earstems, and nose pieces; cases |

| | | |
|---|---|---|
| | | specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |
| 3,771,516 |  | For: Retail store services and on-line retail store services featuring eyewear, replacement lenses, eyewear nosepiece kits, clothing, headwear, footwear, watches, decals, electronics devices, posters, athletic bags, handbags, backpacks and luggage in class 35. |
| 2,300,245 |  | For: Clothing, namely, T-shirts, beachwear, blouses, sports shirts, jerseys, shorts, shirts, pants, racing pants, ski pants, vests, jackets, sweaters, pullovers, coats, sweatpants, sweatshirts, headwear, namely, hats, caps, and footwear, namely, shoes, athletic footwear, all purpose sports footwear in class 25. |
| 1,927,106 |  | For: Printed material, namely decals and stickers in class 16. |
| 1,984,501 |  | For: Protective and/or anti-glare eyewear, namely sunglasses, goggles, spectacles and their parts and accessories, namely replacement lenses, earstems, frames, nose pieces and foam strips; cases specially adapted for protective and/or anti-glare eyewear and their parts and accessories in class 9.<br><br>For: Clothing and headwear, namely T- |

| | | |
|---|---|---|
| | | shirts, sweatshirts, jackets, hats, and caps in class 25. |
| 5,109,790 |  | For: Gloves in class 25. |
| 4,407,750 | CROSSLINK | For: Eyewear, namely, sunglasses, sports goggles, spectacles and their parts and accessories, namely, replacement lenses, ear stems, frames, nose pieces and foam strips; cases specially adapted for eyewear and their parts and accessories in class 9. |
| 3,733,882 | IRIDIUM | For: Protective eyewear, namely, spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely, replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |
| 4,827,569 | JAWBREAKER | For: Eyewear, namely, sunglasses, spectacles and their parts and accessories, namely, replacement lenses and frames, in class 9. |
| 4,407,749 | RADARLOCK | For: Eyewear, namely, sunglasses, sports goggles, spectacles and their parts and accessories, namely, replacement lenses, ear stems, frames, nose pieces and foam strips; cases specially adapted for eyewear and their parts and accessories in class 9. |

| | | |
|---|---|---|
| 3,489,952 | OIL RIG | For: Protective eyewear, namely, spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely, replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |
| 4,194,197 | FROGSKINS | For: Eyewear, namely sunglasses and accessories for sunglasses, namely, replacement lenses, ear stems and nose pieces in class 9. |
| 4,847,461 | FLAK | For: Eyewear, namely, sunglasses, goggles, spectacles and their parts and accessories, namely, replacement lenses, ear stems, frames, nose pieces and foam strips; cases specifically adapted for eyewear and their parts and accessories in class 9. |
| 3,379,110 | RADAR | For: Protective eyewear, namely, spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely, replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |
| 5,026,399 | LATCH | For: Eyewear, namely, sunglasses, spectacles and their parts and accessories, namely, replacement lenses, frames, in class 9. |

| | | |
|---|---|---|
| 4,822,664 | SI TOMBSTONE | For: Protective and anti-glare eyewear, namely, sunglasses, goggles, spectacles and their parts and accessories, namely, replacement lenses, ear stems, frames, nose pieces and foam strips; cases specifically adapted for protective and anti-glare eyewear in class 9. |
| 3,245,494 | GASCAN | For: Protective eyewear, namely spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |
| 4,956,691 | TRIGGERMAN | For: Eyewear, namely, sunglasses in class 9. |
| 3,680,975 | FIVES SQUARED | For: Protective eyewear, namely, spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely, replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |
| 2,900,432 | VALVE | For: Protective eyewear, namely spectacles, prescription eyewear, namely, spectacles and sunglasses, anti-glare glasses and sunglasses and parts thereof, namely replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses in class 9. |

| | | |
|---|---|---|
| 3,941,018 | PATH | For: Protective eyewear, namely, spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely, replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |
| 5,026,407 | JUPITER SQUARED | For: Protective eyewear, namely, spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely, replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |
| 4,136,113 | BATWOLF | For: Protective eyewear, namely, spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely, replacement lenses, frames, ear stems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |
| 1,701,476 | M FRAME | For: Protective eyewear; namely, goggles, anti-glare glasses; sunglasses and their parts; namely, lenses, replacement lenses, frames, earstems and nose pieces; cases specially adapted for sunglasses and their parts in class 9. |

| | | |
|---|---|---|
| 2,054,810 | STRAIGHT JACKET | For: Protective and/or anti-glare eyewear, namely, sunglasses, goggles, spectacles and their parts and accessories including replacement lenses, earstems, frames, nose pieces and foam strips; cases specially adapted for protective and/or anti-glare eyewear and their parts and accessories in class 9. |
| 3,379,109 | FLAK JACKET | For: Protective eyewear, namely, spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely, replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |
| 4,618,566 | TINCAN | For: Eyewear, namely, sunglasses, goggles, spectacles and their parts and accessories, namely, replacement lenses, ear stems, frames, nose pieces and foam strips; cases specifically adapted for eyewear and their parts and accessories in class 9. |
| 2,106,614 | SQUARE WIRE | For: Protective and/or antiglare eyewear, namely, sunglasses, goggles, spectacles and their parts and accessories, namely, replacement lenses, earstems, frames, nose pieces, and foam strips; cases specially adapted for protective and/or antiglare eyewear and their parts and accessories in class 9. |

| 1,952,697 | JACKET | For: Protective and/or anti-glare eyewear, namely sunglasses, goggles, spectacles and their parts and accessories, namely replacement lenses, earstems, frames, nose pieces and foam strips; cases specially adapted for protective and/or anti-glare eyewear in class 9. |
| --- | --- | --- |
| 3,468,824 | HIJINX | For: Protective eyewear, namely, spectacles, prescription eyewear, anti glare glasses and sunglasses and their parts and accessories, namely, replacement lenses, frames, earstems, and nose pieces; cases specially adapted for spectacles and sunglasses and their parts and accessories in class 9. |
| 2,087,464 | O FRAME | For: Protective eyewear, namely, goggles and replacement parts for goggles in class 9. |
| 2,087,466 | E FRAME | For: Protective eyewear, namely, goggles and replacement parts for goggles in class 9. |
| 3,126,622 | CROWBAR | For: Sporting goods, namely goggles and replacement parts for goggles for skiing, snowboarding and motocross in class 9. |
| 1,778,325 | HYBRID | For: Protective eyewear; namely, spectacles, goggles, antiglare glasses and sunglasses, and their parts and accessories; namely, replacement lenses, frames, earstems |

| | | |
|---|---|---|
| | | and nose pieces; cases specially adapted to hold spectacles and sunglasses and their parts and accessories in class 9. |
| 2,250,767 | ROMEO | For: Protective and/or anti-glare eyewear, namely, sunglasses, and spectacles in class 9. |
| 5,636,292 | HOLBROOK | For: Eyewear, namely, sunglasses, goggles for sports, spectacles and their parts and accessories, namely, replacement lenses, ear stems, frames, nose pieces and foam strips; cases specifically adapted for eyewear and their parts and accessories in class 9. |
| 2,393,107 |  | For: Protective eyewear, namely, spectacles, anti-glare glasses and sunglasses and parts thereof, namely frames and earstems in class 9. |
| 2,403,609 |  | For: Protective eyewear, namely, spectacles, anti-glare glasses, and sunglasses and parts thereof, namely, frames and earstems in class 9. |
| 2,388,070 | JULIET | For: protective and/or anti-glare eyewear, namely, sunglasses, spectacles, and their parts and accessories, namely, replacement lenses, earstems, frames, nose pieces and foam strips; cases specially adapted for protective and/or anti-glare eyewear and their parts and accessories in class 9. |

| | | |
|---|---|---|
| 2,155,819 | X-METAL | For: protective and/or anti-glare eyewear, namely sunglasses, spectacles, goggles and their parts and accessories, namely replacement lenses, earstems, frames, nose pieces and foam strips; glasses specially adapted for protective and/or anti-glare eyewear, and their parts and accessories in class 9. |
| 4,813,708 | PRIZM | For: Protective and/or anti-glare eyewear, namely, sunglasses, and their parts and accessories, namely, replacement lenses, in class 9. |
| 3,857,379 | COSTA | For: sunglasses and sunglass frames in class 009. |
| 5,653,368 | COSTA | For: eyeglasses and related accessories, namely, eyeglass lenses, eyeglass cases in class 009. |
| 4,163,647 | COSTA | For: On-line retail store services featuring sunglasses and related accessories, namely, sunglass lenses, retention cords, and clothing, namely shirts and hats in class 035. |
| 3,773,612 | COSTAS | For: sunglasses and sunglass frames in class 009. |

| | | |
|---|---|---|
| 1,723,449 | COSTA DEL MAR | For: sunglasses in class 009. |
| 3,002,972 | COSTA DEL MAR | For: clothing, namely, hats, shirts in class 025. |
| 5,729,388 | DEL MAR | For: eyewear, namely, sunglasses, sunglass frames, and sunglass lenses in class 009. |
| 5,944,853 | COSTA | For: eyewear cleaning solution in class 003.<br><br>For: eyeglass lanyards; waterproof dry cases for cell phones in class 009.<br><br>For: stickers, decals, bumper stickers, decorative decals for vehicle windows in class 016.<br><br>For: bottle openers; drinking glasses, namely, tumblers, insulated containers for beverages, heat-insulated containers for beverages, containers for hot beverages, containers for cold beverages, coffee and tea mugs; microfiber cloths for cleaning in class 021.<br><br>For: lanyards for holding keys in class 022.<br><br>For: neck gaiters; knit face masks; bandanas in class 025. |

| | | |
|---|---|---|
| 4,520,088 |  | For: clothing, namely, shirts and hats in class 025. |
| 5,646,820 |  | For: eyeglasses and related accessories, namely, eyeglass lenses, eyeglass cases in class 009. |
| 3,273,228 |  | For: sunglasses, sunglass frames, sunglass lenses in class 009. |
| 5,465,884 |  | For: backpacks, beach bags, tote bags, duffle bags in class 018. |
| 5,653,366 |  | For: eyeglasses and related accessories, namely, eyeglass lenses, eyeglass cases in class 009. |
| 3,273,229 |  | For: sunglasses, sunglass frames, sunglass lenses in class 009. |

| | | |
|---|---|---|
| 3,420,371 | C-MATES | For: combination sunglasses and reading glasses in class 009. |
| 4,599,722 | C-WALL | For: sunglass lenses; sunglass lens coatings sold as an integral component of sunglasses in class 009. |
| 3,711,018 | COSTA 580 | For: sunglasses and sunglass frames, sunglass lenses in class 009. |
| 4,891,374 | 580 | For: sunglass lenses in class 009. |
| 4,771,385 | BEYOND POLARIZED | For: sunglasses, sunglass lenses in class 009. |
| 4,767,077 | BORN ON THE WATER | For: sunglasses, sunglass frames, sunglass lenses in class 009. |
| 3,274,581 | SEE WHAT'S OUT THERE | For: sunglasses, sunglass frames, sunglass lenses in class 009. |

| | | |
|---|---|---|
| 5,446,112 | KICK PLASTIC | For: clothing made from recycled materials, namely, t-shirts in class 025.<br><br>For: providing a website featuring information about recycling in class 040.<br><br>For: providing a website featuring information about environmental conservation in class 042. |
| 4,768,671 | HIGHLINE | For: eyewear, namely, sunglasses in class 009. |
| 3,274,582 | FATHOM | For: sunglasses, sunglass frames, sunglass lenses in class 009. |
| 2,899,507 | LIGHTWAVE | For: optical and sunglass lenses in class 009. |
| 3,153,673 | SILENCER | For: sunglasses in class 009. |
| 3,729,798 | ZANE | For: sunglasses and sunglass frames in class 009. |

| | | |
|---|---|---|
| 4,342,211 | BLACKFIN | For: sunglasses, sunglass frames, and sunglass lenses in class 009. |
| 3,270,766 | HAMMERHEAD | For: sunglasses, sunglass frames, sunglass lenses in class 009. |
| 3,270,765 | HARPOON | For: sunglasses, sunglass frames, sunglass lenses in class 009. |
| 3,067,284 | HARDTOP | For: sunglasses and frames in class 009. |
| 2,312,428 | RHYNO-TUFF | For: sunglasses in class 009. |
| 2,306,527 | ANTI-OCULAR INTRUSION SYSTEM | For: sunglasses in class 009. |
| 3,837,688 | N | For: sunglasses and related accessories, namely, sunglasses cases, retention cords, replacement parts, and temple-bar release devices; sports goggles for snow sports and motorsports in class 009. |

| 3,837,682 |  | For: sunglasses and related accessories, namely, sunglasses cases, retention cords, replacement parts, and temple-bar release devices; sports goggles for snow sports and motorsports in class 009. |
| --- | --- | --- |
| 3,581,846 | NATIVE | For: eyewear, namely, sports goggles for snow sports and motorsports in class 009. |
| 5,956,148 |  | For: sunglasses and related accessories, namely, sunglass lenses, sunglass cases and sunglass retention cords; sports goggles for snow sports in class 009.<br><br>For: online retail store services, featuring sunglasses and related accessories, namely, sunglass lenses, frames, nose pads, temple boots, and cases in class 035. |
| 5,875,336 |  | For: hats and shirts in class 025. |
| 5,201,379 |  | For: goggles for ski sports; ski goggles; snow goggles in class 009. |

| | | |
|---|---|---|
| 4,114,951 |  | For: sports eyewear and sunglasses in class 009. |
| 3,431,239 |  | For: eyewear, namely, sports eyewear and sunglasses in class 009. |
| 3,245,770 |  | For: sports eyewear and sunglasses in class 009. |

8.    The above U.S. registrations for the Plaintiffs' Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. True and correct copies of the United States Registration Certificates for the above-listed Plaintiffs' Trademarks are attached hereto as **Exhibit 1**.

9.    The Plaintiffs' Trademarks are distinctive when applied to Plaintiffs' Products, signifying to the purchaser that the products come from Plaintiffs and are manufactured to Plaintiffs' quality standards. Whether Plaintiffs manufacture the products or contract with others to do so, Plaintiffs have ensured that products bearing Plaintiffs' Trademarks are manufactured to the highest quality standards.

10.   Plaintiffs' Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and have been continuously used and never abandoned. The innovative marketing and product designs of Plaintiffs' Products have enabled Plaintiffs' brands to achieve widespread recognition and fame and have made the Plaintiffs' Trademarks some of the most well-known marks in the eyewear industry. The widespread fame, outstanding reputation, and significant goodwill associated with Plaintiffs' brands have made the Plaintiffs' Trademarks valuable assets of Plaintiffs.

11.   Plaintiffs have expended substantial time, money, and other resources in advertising and promoting the Plaintiffs' Trademarks. In fact, Plaintiffs have expended millions of dollars annually in advertising, promoting and marketing featuring the Plaintiffs' Trademarks. Plaintiffs' Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs. As a result, products bearing the Plaintiffs' Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Plaintiffs. Plaintiffs' Products have become among the most popular of their kind in the U.S. and the world. The Plaintiffs' Trademarks have achieved tremendous fame and recognition which has only added to the inherent distinctiveness of the marks. Because of these and other factors, Plaintiffs' Trademarks have become famous. As such, the goodwill associated with Plaintiffs' Trademarks is of incalculable and inestimable value to Plaintiffs.

12.   Genuine Plaintiffs' Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with Plaintiffs' brands.

13.   For many years, Plaintiffs have operated websites at ray-ban.com, oakley.com, and costadelmar.com. Sales of Plaintiffs' Products via these websites are significant. The

websites feature proprietary content, images and designs exclusive to Plaintiffs' brands. Attached hereto as **Exhibit 2** are true copies of portions of the ray-ban.com, oakley.com, and costadelmar.com websites.

14.     The success of Plaintiffs' brands has resulted in their significant counterfeiting. Consequently, Plaintiffs have a worldwide anti-counterfeiting program and regularly investigate suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, Plaintiffs have identified numerous fully interactive e-commerce stores, including those[1] operating under the seller aliases identified in Schedule A to the Complaint (the "Seller Aliases"), which were offering for sale and/or selling unauthorized and unlicensed products, including eyewear, using infringing and counterfeit versions of Plaintiffs' Trademarks (the "Counterfeit Products") to consumers in this Judicial District and throughout the United States.

15.     I perform, supervise, and/or direct investigations related to Internet-based infringement of Plaintiffs' Trademarks. Our investigation shows that Defendants are using the Seller Aliases to sell Counterfeit Products from foreign countries such as China to consumers in the U.S. and elsewhere. I, or someone working under my direction, analyzed each of the e-commerce stores operating under the Seller Aliases and determined that Counterfeit Products were being offered for sale to residents of the United States, including Illinois residents. This conclusion was reached through visual inspection of the products listed for sale on each e-commerce store, the price at which the Counterfeit Products were offered for sale, other features commonly associated with e-commerce stores selling counterfeit products, and because Defendants and their e-commerce stores do not conduct business

---

[1] The e-commerce store urls are listed on Schedule A to the Complaint under the Online Marketplaces and Domain Names.

with Plaintiffs and do not have the right or authority to use the Plaintiffs' Trademarks for any reason. In addition, each e-commerce store offered shipping to the United States, including Illinois. Plaintiffs also conducted searches of the public WhoIs information regarding the Domain Names and identified the provided e-mail addresses for each domain. True and correct copies of screenshot printouts showing the active e-commerce stores operating under the Seller Aliases reviewed are attached as **Exhibit 3**, and WhoIs information for the Domain Names is attached as **Exhibit 4**.

16.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit Products to residents of Illinois.

17.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases look sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiffs have not licensed or authorized Defendants to use any of Plaintiffs' Trademarks, and none of the Defendants are authorized retailers of genuine Plaintiffs' Products.

18.     Many Defendants also deceive unknowing consumers by using Plaintiffs' Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores

to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Plaintiffs' Products. Other e-commerce stores operating under the Seller Aliases omit using Plaintiffs' Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Plaintiffs' Products.

19. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

20. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

21. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other seller aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit Products for sale by the Seller Aliases bear similar irregularities

and indicia of being counterfeit to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that Defendants are interrelated.

22. E-commerce store operators like Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

23. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Plaintiffs' enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiffs.

24. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiffs, have jointly and severally, knowingly and willfully used and continue to use Plaintiffs' Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet.

25. Monetary damages cannot adequately compensate Plaintiffs for ongoing infringement because monetary damages fail to address the loss of control of and damage to Plaintiffs' reputation and goodwill. Furthermore, monetary damages are difficult, if not impossible, to ascertain due to the inability to calculate measurable damage in dollars and cents caused to

Plaintiffs' respective reputations and the goodwill associated therewith by acts of infringement.

26. The goodwill of Plaintiffs and their respective reputations are irreparably damaged when Plaintiffs' Trademarks are used in connection with the offering for sale or sale of goods not authorized, produced, or manufactured by Plaintiffs. Moreover, brand confidence is damaged, which can result in a loss of future sales and market share. The extent of harm to Plaintiffs' reputations and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable.

27. Plaintiffs are further irreparably harmed by the unauthorized use of Plaintiffs' Trademarks because counterfeiters take away Plaintiffs' ability to control the nature and quality of the Counterfeit Products. Loss of quality control over goods offered for sale or sold under the Plaintiffs' Trademarks and, in turn, loss of control over Plaintiffs' respective reputations is neither calculable nor precisely compensable.

28. The use of Plaintiffs' Trademarks in connection with the offering for sale or sale of goods not authorized, produced, or manufactured by Plaintiffs is likely causing and will continue to cause consumer confusion, which weakens Plaintiffs' brand recognition and reputation. Consumers who mistakenly believe that the Counterfeit Products he or she has purchased originated from Plaintiffs will come to believe that Plaintiffs offer low-quality products. Inferior quality products will result in increased skepticism and hesitance in consumers presented with genuine Plaintiffs' Products, resulting in a loss or undermining of Plaintiffs' respective reputations and goodwill. Indeed, there is damage to Plaintiffs' respective reputations and goodwill even if a consumer knows that the goods he or she is purchasing are counterfeit. Prospective consumers who see inferior Counterfeit Products worn by

others may mistakenly believe such goods to be genuine and may consequently develop a poor impression of Plaintiffs and Plaintiffs' Trademarks. Such post-sale confusion results in damage to Plaintiffs' respective reputations and correlates to a loss of unquantifiable future sales.

29.     Plaintiffs are further irreparably damaged due to a loss of exclusivity. Plaintiffs' Products are meant to be exclusive. Plaintiffs' extensive marketing efforts and innovative designs are aimed at growing and sustaining sales. Plaintiffs' Trademarks are distinctive and signify to consumers that the products originate from Plaintiffs and are manufactured to Plaintiffs' high quality standards. When counterfeiters use Plaintiffs' Trademarks to offer for sale or sell goods without Plaintiffs' authorization, the exclusivity of Plaintiffs' products, as well as Plaintiffs' respective reputations, are damaged and eroded, resulting in a loss of unquantifiable future sales.

30.     Plaintiffs will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this the  2nd  day of March 2022 at Mason, Ohio.

    /s/ Jason Groppe
    Jason Groppe